UNITED STATES of America, Plaintiff-Appellee,

v.

Thomas W. SHIPP, Defendant-Appellant.

No. 16263.

United States Court of Appeals Sixth Circuit.

April 15, 1966.

McAllister, Senior Circuit Judge, dissented.

William P. Streng, Cincinnati, Ohio (Ct. Appointed) (James P. Coleman, Ackerman, Miss., on the brief), for appellant.

William A. McTighe, Jr., Memphis, Tenn. (Thomas L. Robinson, U. S. Atty., Memphis, Tenn., Herbert J. Miller, Jr., Asst. Atty. Gen., Washington, D. C., on the brief), for appellee.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

Appellant was convicted under one substantive count of a multi-count indictment charging use of the mails to defraud in violation of 18 U.S.C. § 1341 and a conspiracy count charging violation of 18 U.S.C. § 371. He was sentenced to imprisonment of three years on each count, to run concurrently.

There were a number of co-defendants. Severances were granted to two co-defendants; as to one of these the indictment is still pending and as to the other a nolle prosequi has been entered. A motion for acquittal was granted as to two co-defendants who were tried with appellant, and all other co-defendants were found not guilty on all counts by the jury. Appellant was found not guilty on seven substantive counts and guilty on only two counts as indicated above.

Appellant contends: (1) that there is not sufficient evidence to support the verdict on either the substantive count or the conspiracy count; (2) that in any event there could be no conviction on the conspiracy count because all his co-defendants are now out of the case; and (3) that the district court committed reversible error in requiring that, if appellant desired to testify in his own defense, he be the first witness for the defense.

1) Sufficiency of the evidence

Early in 1962 appellant arranged for the construction of a working model of a vending machine that would sell accident and life insurance policies in motels, filling stations and similar locations frequented by tourists. On June 13, 1962, a Tennessee corporation was formed for the promotion and sale of such vending machines, with its place of business in

Memphis.[1] Appellant was president of this corporation. The business was operated under the name of Roadmasters, Inc.

During June 1962 some of the co-defendants, all employees or agents of the corporation, began selling the machines, usually in blocks of ten, for the sum of $1,800 per unit. Some purchasers paid cash in full while others made only down payments. No machines ever were delivered to the purchasers and no money was returned to any of them.

The substantive count on which appellant was convicted charged that on or about June 1, 1962, and continuing until about November 1, 1962, appellant, along with his co-defendants, devised and intended to devise a scheme or artifice to defraud and to obtain money and property by means of false and fraudulent pretenses by selling said vending machines; and that sales were promoted by advertisements, personal visits and verbal representations, as well as by mail solicitation. Specifically the first count of the indictment charged that:

> "On or about July 17, 1962, at Memphis, Shelby County, in the Western Division of the Western District of Tennessee, in violation of Section 1341, Title 18, United States Code, the said defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting so to do, did place and cause to be placed in an authorized depository for mail matter, a letter from Roadmaster Company, Inc., signed Richard A. Beebe and addressed to:

> Mr. William A. Rolston, Jr.,
> 3865 Chatfield Avenue,
> Baton Rouge, Louisiana,

to be sent and delivered by the Post Office Establishment of the United States of America."

The seven other substantive counts, on which appellant and his co-defendants were found not guilty, charged mail solicitations of other persons on dates between July 11, 1962, and September 12, 1962.

Appellant contends that by its verdict of not guilty on other counts the jury found that the scheme to defraud existed only between July 11 and July 17 and that the government failed to prove that any mail solicitations occurred during this period. We do not think that the jury verdict may be so interpreted.

■■ It is well established that each count of an indictment is to be considered separately. "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356; United States v. McGee, 315 F.2d 479, 481 (C.A.6). A jury does not have to be consistent in order to be effective. United States v. Johnson, 165 F.2d 42, 46 (C.A.3), cert. denied, 332 U.S. 852, 853, 68 S.Ct. 355, 92 L.Ed. 421. Appellant had no vested right in the punishment of his co-defendants, no matter how guilty they may have been. United States v. Austin-Bagley Corp., 31 F.2d 229, 233 (C.A.2), cert. denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002.

The evidence shows that William A. Rolston saw an advertisement in a Baton Rouge newspaper;[2] that he replied to this advertisement by an inquiry directed to Roadmaster; that he received letters from Roadmaster;[3] that a repre-

---

1. The corporate charter is of record in the office of the Secretary of State, but was never placed of record in the office of the County Register as required by Tennessee law.

2. The advertisement stated:
   "EXCELLENT BUSINESS OPPORTUNITY—
   "National Company has need for agent in your area. Must be financially sound, have bank references, be bondable. You can make up to $20,000 a year if you

qualify. Write or phone for personal interview with company executive. ROADMASTER COMPANY, INC., Dept. #1 1712 Union Ave. Memphis 4, Tenn., Phone 272-9663."

3. The letterhead of Roadmaster stated:
   "Millions of dollars are spent annually for the purchase of travel insurance. Vended travel insurance is a quick, convenient and economical method of handling your insurance needs.

sentative from Roadmaster went to Baton Rouge and talked to him concerning the machines; that as a result of this conversation, Rolston purchased ten machines and at the time paid a deposit by check in the amount of $150.00 for which he was given a receipt; that a purchase agreement was signed by Rolston, taken to Memphis, signed by appellant, and mailed back to Rolston in Baton Rouge; that representations were made to Rolston that the machines would be delivered in about six weeks; that subsequently, on July 17, 1962, Rolston received a letter from Roadmaster,[4] signed by Richard A. Beebe, office manager, requesting that he forward the balance of $1650 to Roadmaster in Memphis; that as a result of this letter, Rolston forwarded the balance by mail; that on July 25 receipt of this money was acknowledged for Roadmaster by Mr. Beebe; that when the machines were not delivered Rolston sent a telegram to appellant inquiring as to when the machines would be delivered; and that a letter[5] was received by him from Mr. Beebe stating that the "machines are on the assembly line" and would be shipped within the next few days; and that the machines were never

received and that no restitution of the money has been made.

The evidence shows that although a prototype of the proposed machine was built, no machines were actually manufactured for sale and delivery.

In considering whether there is sufficient evidence to support the verdict of the jury, we view the evidence as well as the inferences properly deducible therefrom in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Salter, 346 F.2d 509 (C.A.6).

The elements of the offense of mail fraud are a scheme to defraud and the mailing of a letter for the purpose of executing the scheme. Proof of the scheme to defraud requires establishment of the element of intent. Questions of intent are for the jury. United States v. Lichota, 351 F.2d 81, 89 (C.A.6), cert. denied, 382 U.S. 1027, 86 S.Ct. 647, 15 L.Ed.2d 540; and cases therein cited; United States v. Hopkins, 357 F.2d 14 (C.A.6) (No. 16,129, Feb. 17, 1966). Appellant contends that all the solicitations are shown to have been made by co-de-

"There is not an individual who is not a potential travel insurance buyer. Furthermore, traffic safety and insurance has been built up in the eyes of the consumer through national advertising.

"There is already a ready-made acceptance and demand for travel insurance, which has increased tremendously during the past years, and will continue to increase in direct proportion to the growth in population, the continued use of advertising which makes the American family travel and safety conscious."

4. This letter, written on Roadmaster's letterhead, was as follows:
"Mr. William Rolston, Jr.
3865 Chatfield Avenue
Baton Rouge, Louisiana
"Dear Mr. Rolston:
"On July 11, 1962, Mr. Tom W. Shipp, President of Roadmaster Company wrote you his letter of acceptance constituting the ratification of your contract signed on June 30, 1962.
"On the date of ratification, $1,650.00 was due to be forwarded to this office to fulfill your contract monetary obliga-

tions. As yet I have not received your certified check, but I am sure this is merely an oversight on your part.
"I shall be pleased to hear from you in the next few days so that we may continue to process your order.
"If I can be of any assistance to you in the future, please feel free to contact me at any time."

5. This letter from Roadmaster, dated September 8, 1962, mailed to Mr. Rolston at same address as above, which was in reply to Mr. Rolston's telegram, stated:
"Dear Mr. Rolston:
"Your telegram of September 3, 1962, has been received by this office, and at the present time I am happy to inform you that your machines are on the assembly line, and that we should receive their definite shipping date within the next few days. When I have this information I shall be happy to forward it to you, and, of course, our Marketing Director will arrive on approximately the same date that the machines are due in your locale."

fendants who have been found to be not guilty. The proof is clear, however, that such solicitations were made in the name of Roadmaster, of which appellant was president, and that appellant was involved personally in the entire project. We hold that the evidence was sufficient for the jury to find that the letter of July 17, 1962 (footnote 4) was caused to be mailed by appellant or was mailed with his knowledge and approval and that there existed the requisite fraudulent intent on the part of appellant. We conclude that the evidence is sufficient to support the conviction on the substantive count.

██ Without lengthening this opinion with a further recitation of details, we also hold that the evidence is sufficient to support the conviction on the conspiracy count.

### 2) The charge of conspiracy

██ Appellant further contends that the conviction for conspiracy cannot stand in any event because he is the only party now remaining in the case, since two co-defendants were granted severances and the others have been acquitted. We reemphasize that as to one of the defendants who was granted a severance, the district court granted a nolle prosequi upon motion of the government. The other defendant has not been tried nor has a nolle prosequi been granted.

Appellant relies upon Bates v. United States, 323 U.S. 15, 65 S.Ct. 15, 89 L.Ed. 13, and numerous similar cases to the effect that conspiracy requires more than one actor and that the reversal of the conviction of one of two conspirators dictates an acquittal of the other. A recent case to this effect is Lubin v. United States, 313 F.2d 419 (C.A.9). The present case is distinguishable on its facts from these cases.

In United States v. Fox, 130 F.2d 56 (C.A.3), cert. denied, 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535, the court held that a nolle prosequi was not the equivalent of an acquittal, that neither guilt nor innocence of the co-conspirator had been established, and thus the entry of a nolle prosequi as to all except one defendant will not vitiate the conviction of the remaining defendant on a conspiracy count.

Further it has been held that the conviction of one defendant may be sustained after acquittal of all other defendants when a severance has been granted as to some and final disposition has not been made as to the remaining defendant or defendants. DeCamp v. United States, 56 App.D.C. 119, 10 F.2d 984, 985 (C.A. D.C.); United States v. Koritan, 182 F.Supp. 143, 145 (D.C.Pa.), aff'd 283 F.2d 516 (C.A.3).

In the present case a party remains under prospect of prosecution so as not to preclude a verdict on the conspiracy count. Under these facts and circumstances we cannot say that the jury could not find a conspiracy.

### 3) Alleged prejudice to appellant as to the order of the proof

Finally appellant contends that prejudicial error was committed when the district court ruled that if the defendant was going to testify he must do so before he presented any other proof in his own behalf and that he must do so before any other defendants testified or offered proof.

In United States v. Copeland, 295 F.2d 635, 636 (C.A.4), cert. denied, 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388, the court said:

"[T]here can be no question but that the order of the reception of evidence lies within the discretion of the Trial Judge, whose action will not be reversed on appeal unless it amounts to a gross abuse of discretion. United States v. Manton, 2 Cir., 107 F.2d 834, Braatelien v. United States, 8 Cir., 147 F.2d 888, Tingle v. United States, 8 Cir., 38 F.2d 573, Cohen v. United States, 2 Cir., 157 F. 651."

To like effect see: Strauss v. United States, 311 F.2d 926, 931 (C.A.5), cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412; Cwach v. United States, 212 F.2d 520, 521 (C.A.8).

██ The present case involved appellant and four co-defendants. Appellant was the first defendant named in the in-

dictment and president of the corporation involved, while the co-defendants were mere agents or employees of the corporation. Although we do not hold that it is a desirable or permissible practice in all cases to require that a defendant who elects to testify on his own behalf must take the stand before any other proof is introduced, we are unable to say that the district court abused its discretion or committed prejudicial error in prescribing this order of proof in this case.

Affirmed.

McALLISTER, Senior Circuit Judge (dissenting).

In the accompanying opinion it is held that it was not prejudicial error for the district court to rule that if the defendant-appellant was going to testify in this criminal case, he must do so before he presented any other proof in his own behalf, and that he must do so before any other defendants testified or offered proof. Counsel for appellant strongly objected to this ruling, and did not thereafter introduce the testimony of any witnesses on behalf of appellant. The court's ruling was, in my opinion, unreasonable and arbitrary and may well have resulted in prejudicial error. In saying this, I do not, in any manner, reflect upon the fairness and impartiality of Honorable Bailey Brown, the district judge who made this ruling. He was following the rule provided for by statute in the State of Tennessee, as well as in Kentucky, and which is followed in some other jurisdictions. Of course, when there are several defendants in a criminal case and counsel for none of them wishes to take the first step in submitting his defense witnesses, the trial court must, of necessity, decide the question which defendant must first produce his proofs and, also, in case of necessity, the order in which other defendants must proceed. However, in a well-reasoned opinion in Bell v. State, 66 Miss. 192, 5 So. 389, where it was held error to require an accused, "as a condition upon which he would be permitted to testify at all, to take the stand before examining othering witnesses whom he desired to introduce," the court declared: "It must often be a very serious question with the accused and his counsel whether he shall be placed upon the stand as a witness, and subjected to the hazard of cross-examination, and one which cannot be a question that he is not required to decide until upon a full survey of all the case, as developed by the state, and met by witnesses on his own behalf. He may intelligently weigh the advantages and disadvantages of his situation, and, thus advised, determine how to act. Whether he shall testify or not; if so, at what stage in the progress of his defense, —are equally submitted to the free and unrestricted choice of one accused of crime, and are in the very nature of things beyond the control or direction of the presiding judge."

The defense of a man charged with crime is often one of the most difficult professional tasks which confronts a lawyer. The witnesses to be called to sustain the defense are frequently persons whose character can be easily assailed by the prosecutor. The questions to be asked must be reflected upon with utmost care, for the wrong or careless question may bring an answer that imperils the liberty of the accused. If the man charged with crime takes the witness stand in his own behalf, any and every arrest and conviction, even for lesser felonies, can be brought before the jury by the prosecutor, and such evidence may have devastating and deadly effect, although unrelated to the offense charged. The decision as to whether the defendant in a criminal case shall take the stand is, therefore, often of utmost importance, and counsel must, in many cases, meticulously balance the advantages and disadvantages of the prisoner's becoming a witness in his own behalf. Why, then, should a court insist that the accused must testify before any other evidence is introduced in his behalf, or be completely foreclosed from testifying thereafter? We have come a long way in protecting

the rights of accused persons in courts, and their rights cannot be made to depend upon a bargain between the accused and the court that if the accused will testify first, then his other witnesses can testify; otherwise not. This savors of judicial whim, even though sanctioned by some authorities; and the cause of justice and a fair trial cannot be subjected to such a whimsicality of criminal procedure.

It is most distressing to be obliged to hold that a conviction that might be otherwise valid should be set aside and the case retried because of such a holding. But this appears to be required in the present case; and it is to be hoped that an opinion to this effect will be salutary and effective in trials of criminal cases in the future in this circuit.